1   Jennifer Marie Jones
2   Mailing address: P.O. Box 1320
    Quartzsite, Arizona, 85346
3   Residence address: La Posa North LTVA
    Quartzsite, Arizona, 85346
4   (legal residence, but no mail service)
5   (928) 785-6318
    thedesertfreedompress@yahoo.com
6

```
                    FILED    ___ LODGED
           ___ RECEIVED ___ COPY

               DEC 1 0 2012

         CLERK U S DISTRICT COURT
            DISTRICT OF ARIZONA
         BY_____ P DEPUTY
```

7

8               IN THE UNITED STATES DISTRICT COURT

9                 FOR THE DISTRICT OF ARIZONA

10

11
    Jennifer Marie Jones,              )
12                                      )
13        Plaintiff,                    )
                                        )
14  v.                                  )
                                        )        COMPLAINT              CV-12-2629-PHX-LOA
15  Town of Quartzsite;                 )        §1983 ACTION
    Jeffrey Gilbert and Sondra Gayle    )
16   Gilbert, Husband and Wife;         ) JURY TRIAL DEMANDED
17  Officer Rick Paterson, #43;         )
    Officer Xavier Frausto, #15, and    )
18  Terry Frausto, Husband and          )
    Wife;  Denise Ann Florian;          )
19  Individual Does I-X                 )
                                        )
20                                      )
21  Defendants.                         )
    _____)
22
            Plaintiff, Jennifer Marie Jones, for her Complaint against all Defendants alleges as
23
    follows:
24
                                    **Jurisdiction**
25
26       1.     This action is brought pursuant to 42 U.S.C. § 1983.  This Court has

27  jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).

28  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2002 to declare

                                        -1-

the rights of the parties and to grant all further relief found necessary and proper. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (a).

2.      This Court has personal jurisdiction over the defendants, who are located in the District of Arizona.

3.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(a) in that the defendants are subject to personal jurisdiction within the District of Arizona and the events that give rise to this action occurred within the District of Arizona.

4.      Plaintiff, Jennifer Marie Jones, is an adult residing within the County of La Paz, Town of Quartzsite, State of Arizona.

5.      Defendant Town of Quartzsite (referred to as "the Town") is a municipality organized under the laws of the state of Arizona and owns, operates, manages, directs and controls the Quartzsite Police Department, which employed other defendants.

6.      Defendant Jeffrey Gilbert (referred to as "Chief Gilbert") was at all relevant times the Chief of the Quartzsite Police Department, and employed by the Quartzsite Police Department. Defendants Jeffrey Gilbert and Sondra Gayle Gilbert, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona. At all times relevant, Defendant Jeffrey Gilbert held the position of Chief of Police in and for the Town of Quartzsite. All actions taken by Defendant Jeffrey Gilbert were on behalf of the marital community. On December 2,

2011, and as part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, Chief Gilbert, acting under color of law and pursuant to the policies of the Town of Quartzsite, approved of, directed, supervised, and participated in the unlawful arrest and imprisonment, without probable cause, of Plaintiff Jones, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, because of her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council. Chief Gilbert is named herein in his individual capacity.

7.    Defendant Officer Rick Paterson, #43 (referred to as "Officer Paterson"), was at all relevant times a Police Officer employed by the Quartzsite Police Department. On December 2, 2011, and as part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, Defendant Officer Paterson, acting under color of law and pursuant to policies of the Town, participated in the arrest without probable cause of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, because of her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council. Defendant Officer Paterson is named herein in his individual capacity.

8.      Defendant Officer Xavier Frausto, #43 (referred to as "Officer Frausto"), was at all relevant times a Police Officer employed by the Quartzsite Police Department. Defendants Xavier Frausto, and Terry Frausto, are and were, at all times relevant, husband and wife residing in La Paz County, Arizona.  At all times relevant, Defendant Xavier Frausto held the position of Police Officer in and for the Town of Quartzsite.  All actions taken by Defendant Xavier Frausto were on behalf of the marital community. On December 2, 2011, and as part of an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, abuse of power, intentional infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, Defendant Officer Frausto, acting under color of law and pursuant to policies of the Town, participated in the arrest without probable cause of Plaintiff, on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, because of her activities as a journalist and publisher which are critical of the Town and of Chief Gilbert, and because of her running for office against incumbents on the Town Council.  Defendant Officer Frausto is named herein in his individual capacity.

9.      Defendant Denise Ann Florian (referred to as "Defendant Florian"), was at the time of Plaintiff's arrest, and at all relevant times preceding and following that arrest, serving as an appointed member of the Personnel Board of the Town of Quartzsite.   As part of, and in support of, an ongoing campaign of malicious prosecution, harassment, First Amendment retaliation, abuse of power, infliction of emotion distress, and conspiracy to violate the rights of Plaintiff, Defendant Florian

colluded with Chief Gilbert, Officer Frausto, Officer Paterson, and other employees of the Town of Quartzite, to falsely accuse Plaintiff of felony witness tampering and to thus facilitate, give false pretext for, contribute to, and participate in the arrest without probable cause and false imprisonment of Plaintiff on December 2, 2011,  on account of her perceived political expression, because of her opposition to the policies of the Town and of Chief Gilbert, her activities as a journalist and publisher which are critical of the Town, of Chief Gilbert, and of Defendant Florian, and because of her running for office against incumbents on the Town Council.  Defendant Florian is named herein in her individual capacity.  These actions by Defendant Florian were taken within the context, and as part of, an ongoing, systematic conspiracy to deny and violate the Plaintiff's civil rights, and within an ongoing campaign of intimidation, retaliation, malicious prosecution and intentional infliction of emotional distress that continues to this day.

10.    The fictitiously named Defendants Individual Does I-X in the caption to the Complaint are individuals who may have in some manner contributed to Plaintiff's injuries and damages and are therefore liable.  The true names for said Defendants are unknown to Plaintiff at this time.  Once the identities of these Defendants are discovered, leave of Court will be sought to amend this Complaint accordingly.  The Doe defendants are named herein in their individual capacities.

## Complaint

### I.      Factual Allegations

11.     Plaintiff Jennifer Jones was arrested by Chief Gilbert and Officer Frausto at the Quartzsite Post Office on December 2, 2011, without a warrant, and initially they refused to tell Plaintiff why she was being arrested, telling her she would find out later. They transported Plaintiff to the holding cell at the back of Town Hall, and finally told her she was being arrested for felony witness tampering, but refused to tell her who made the accusation.   Plaintiff had no idea what they were talking about.   She was then transported to the La Paz County Jail, where she was interviewed by Officer Paterson, who was acting as the investigator.   Officer Paterson finally told her who her accuser was, telling Plaintiff that it was Denise Florian who had accused Plaintiff of threatening her on the steps of Quartzsite Town Hall during a November Town Council meeting – specifically, that Defendant Florian had said that Plaintiff had threatened to bring Florian's ex-boyfriend to Quartzsite (a man whom Florian allegedly fears).

12.     Preceding this false accusation and false arrest for the charge of felony witness tampering, Plaintiff had written articles criticizing the October 25, 2011 decision of the Town Council to place Defendant Florian on the newly created Town Personnel Board, which Plaintiff believed was created specifically to facilitate the firing of some of the whistle-blowing Quartzsite police officers who had issued their written letter accusing Chief Gilbert of abusing his power and harassing Plaintiff and other citizens by means of false charges and false arrest.

13.     The Quartzsite Town Council has a pattern of appointing lackeys and yes-men to the municipal boards, so when the Town posted to the town agenda the intent to

appoint Denise Ann Florian to the personnel board, which had just been created to hear the cases of the whistle-blowing police officers, and Plaintiff nor any of her acquaintances in town knew who Florian was (including Quartzsite Mayor Ed Foster, who had never heard of Florian before she was placed on the agenda), Plaintiff, as a reporter/publisher, investigated by searching for Florian's name online. Plaintiff found that Florian had lived in Anahiem, California. Plaintiff then checked online court records at http://www.occourts.org/online-services/case-access/ and discovered that Florian had a history of filing restraining orders against people she was in disputes with. Plaintiff, in her written criticism of the appointment of Florian, wrote that she appeared to have a "colorful" past.

14.     Plaintiff, while asking around town about Florian, was reminded by a local citizen that Florian was the visibly intoxicated woman who had previously confronted Plaintiff at the Taco Mio Restaurant during Karaoke night, shortly before Florian was appointed to the Personnel Board. Plaintiff recalled that the then-unknown-woman walked up to her, said "I need to talk to you" and grabbed Plaintiff by the arm, pulled her out onto the restaurant patio and asked her what business was it of hers what was going on in Town Hall, asked Plaintiff why she was publishing what she was publishing in her newspaper, and told Plaintiff the goings on at Town Hall were none of her business. This was before Plaintiff even knew who Florian was, and before Plaintiff had written specifically about Florian. Plaintiff did not call the police about being grabbed by this

unknown woman in the bar because she had no expectation the police would protect her in any way, based on her long record of biased treatment by the Quartzsite PD.

15.     Once Plaintiff found out Florian was slated to be appointed to the Personnel Board, and was reminded of the incident at the Restaurant, whereupon she realized it had been Florian who grabbed her and yelled at her, Plaintiff thought it was strange that someone who hadn't lived in Quartzsite very long, and someone who conducted her self in such a way, would ever be put on a board for anything.   Then, after Florian filed a false report against local citizen Dana Stadler (another target of town persecution), Plaintiff knew something was not right and began to investigate, and subsequently wrote an October 12, 2011 article in which she stated:

> Dana Stadler was arrested Monday, Columbus Day around 11 am for allegedly "assaulting" our newly appointed member of the Quartzsite Personnel Board, Denise Florian.   Florian claims Stadler touched her rear end as he walked by, but Stadler insists he was nowhere near her. Florian has a very colorful past, and is expected to be a less than credible witness.

(Available online at: http://thedesertfreedompress.blogspot.com/2011/10/3rd-arrest-for-activist-dana-stadler.html

16.     The comments below the article, posted by others about Florian, were disturbing and raised more questions, so Plaintiff again went online and checked Florian's social networking sites, such as her Facebook and Twitter accounts, and discovered she was  "friends" and followers with the town attorney, Martin Brannan, and also, she believed, Police Chief Gilbert and his wife.   Plaintiff then told Dana Stadler what she had found out about Florian having disputes with people in California, and Stadler told Plaintiff he might contact the people in California that Florian had sought restraining orders against, and get more information from them, and perhaps call them as

character witnesses against Florian as part of his defense against the criminal assault charge.

17.     Thereafter, on the steps of Town Hall, during a Town Council meeting in November, Florian again approached Plaintiff and confronted her, at which point Plaintiff, acting in her role as a journalist, began asking Florian about the upcoming case with Stadler.  Plaintiff asked Florian if it was true that there may be character witnesses coming from out of state to testify in the Stadler matter.   Florian responded by asking what Plaintiff knew about her ex-boyfriend, and Plaintiff responded by telling Florian that she didn't know about anyone in particular, but had heard that character witnesses may be coming, at which point Florian left.  Plaintiff paid it no more mind, and only recalled the incident when she was told by Officer Paterson that it had been Florian who accused Plaintiff of witness tampering based on that brief conversation in front of Town Hall in November.

18.     At no point during that conversation in front of Town Hall did Plaintiff threaten Florian, or threaten to "bring her ex-boyfriend to town" or to bring anyone to town.  All Plaintiff did was ask whether it was true that character witnesses may be brought in from out of state, as is her right as a journalist to ask, as a way of eliciting comments from an interviewee.  That conversation was recorded on the surveillance camera stationed over the Town Hall front door, which covers the area where they were standing.  During the interview with Officer Paterson on December 2, 2011, he acknowledged that he had not yet reviewed that video recording.   When Plaintiff later

sought a copy of that recording by filing an open records request, the Quartzsite Town Attorney refused to give it to her.

19.     As an indication of the bias and disparate treatment of Plaintiff, in November, 2010 Defendants had charged Plaintiff and her husband with false reporting, stemming from their complaint of the video-taped trespassing and assault by building official Al Johnson, with those charges later dismissed.  However, in sharp contrast, no one who has levied false charges against Plaintiff has ever been charged with false reporting, no matter how obvious the fabrication.

20.     On December 2, 2011, after being arrested and transported to the jail, Plaintiff was finally told that Florian was the accuser, and finally realized that this was payback for Plaintiff's articles criticizing Florian and the Town, and that Florian was colluding with Chief Gilbert to harass, intimidate, and punish Plaintiff in retaliation for her journalism and activism.

21.     After being arrested on December 2, 2011, Plaintiff spent over 24 hours in jail, during which time she had a severe headache, and was denied medical attention despite multiple requests for same.   During this time, a blood vessel in Plaintiff's eye burst.  The burst blood vessel was noticed by one of the officers as Plaintiff was taken to a video conference with the Justice of the Peace the next morning to plead not guilty and have her bail set.   Plaintiff was released on bail at approximately 6pm that evening on December 3, 2011.

22.     The preliminary hearing on the charge of felony witness tampering was subsequently vacated on December 6, 2011, along with an order to release, as Plaintiff noted in a December 9, 2011 article she wrote and posted on her newspaper's website once she became aware of that fact: (available online at: http://thedesertfreedompress.blogspot.com/2011/12/no-justice-for-jennifer-jones-charges.html).

23.     Mr. Sam Vederman, the La Paz County Attorney, refused to bring felony charges, and in a January 3, 2012 letter to the FBI stated that "Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred."  (Available online at: http://www.aview.info/A-View/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-01-03-FBI-letter-AV.pdf). Among those charges was listed one against "Jennifer Jones (Influencing a witness)." Since Quartzsite has a pattern of reviving dismissed charges and bringing them against Plaintiff again at a later date, it was not until she became aware of Mr. Vederman's January 3, 2012 letter to the FBI, starting that he believed no criminal conduct occurred and acknowledging it was a baseless accusation, that she was certain she would not be prosecuted for the charge of witness tampering, and was fully aware that she had a basis for a complaint.

24.     The Town of Quartzsite retained command, control, and authority over, and was responsible for, the actions of the Defendants at all relevant times.

25.     The December 2, 2011 arrest was one among a total of five (so far) false arrests within an ongoing and escalating pattern of harassment, intimidation, malicious prosecution, retaliation for free speech, abuse of power, and conspiracy to violate the constitutional rights of Plaintiff, by Chief Gilbert, some of his officers, and members of the Town Council and staff, including the Defendants in this instant complaint.  That pattern of violation of rights began when Mrs. Jones became a vocal critic of the Town Council members and the Chief of Police, both as an activist and as a journalist, as well as a political opponent of members of the Town Council.

26.     As noted above, even Mr. Vederman, the La Paz County Attorney, sees a pattern and practice of targeted, malicious prosecution, false charges, and false arrest against Plaintiff and other residents of Quartzsite, Arizona, and multiple state and federal agencies are now investigating.

27.     Mrs. Jones' first false arrest occurred on November 19, 2010, within several days after a town council meeting where Mrs. Jones publicly announced that she would be running for a Town Council position, and announced that she was starting an independent newspaper, The Desert Freedom Press, which is both a hard copy and online newspaper, with paid advertisers, published bi-monthly, with a peak circulation of 20,000 copies at the height of the tourist season.    On May 19, 2012, Mrs. Jones was nominated for the Arizona Press Club "Sledgehammer" Award for her reporting on the suspicious goings-on in the Quartzsite government.

28.     The harassment of political opponents in Quartzsite has not been confined to Mrs. Jones, as is well documented in the May 10, 2011 letter issued to the Town Council and Town Manager by ten out of thirteen of the officers serving in the Quartzsite Police Department, under the letterhead of the Quartzsite Police Officers Association (available online at http://www.scribd.com/doc/59823583/Quarlzsite-Police-Officers-Association-Letter-regarding-Police-Chief).

29.     That letter from the ten Quartzsite officers stated that Chief Gilbert intentionally and improperly targets citizens for political persecution and retaliation in the form of trumped up and fabricated citations and arrests.  In that official letter, those ten courageous and principled whistle-blowing officers expressed a formal vote of no-confidence in the Chief, and stated that he should be removed from office.

30.     That letter from the ten Quartzsite police officers was delivered to each member of the Town Council and also to the Town Manager.

31.     The letter from the ten Quartzsite police officers was also delivered to the Arizona Peace Officer Standards and Training Board (AZPOST) on May 11, 2011, requesting an investigation into wrongdoing by Chief Gilbert.

32.     The officers also filed a complaint and with the Arizona Department of Public Safety, Major Crimes Division.

33.     Among the allegations brought by the officers against Chief Gilbert in that May 10, 2011 letter were that: **"He runs license plates just to find out names of people whose vehicles are parked at businesses/residences of people he doesn't like. Not for**

**an investigation, but to gain personal Information about people for his political benefit. He runs criminal history reports through NCIC to try to find "dirt" on candidates or citizens supporting the candidates he does not like .... He orders officers to pull over and arrest/cite violations of citizens he feels are against him or he doesn't like. Not because they have committed a violation that he wants enforced equally, but because it is someone he doesn't like. Clearly this is a misuse of his power."** (emphasis added)

34.     Even after being given that letter from the ten whistle-blowing officers, the Town Council took no action to curtail the documented abuses of citizens.

35.     In addition, the officers presented their grievances yet again to the Town Council during a public meeting on June 14, 2011 (the meeting just prior to the June 28, 2011 meeting where Mrs. Jones was unlawfully removed from the podium and arrested while exercising her constitutionally protected right to free speech.  See Complaint in Case No. 2:12-cv-01383-JAT).   At that June 14, 2011 meeting, John Stair, at the time Vice President of the Arizona Conference of Police and Sheriffs (AZCOPS), spoke on behalf of the ten Quartzsite officers, and testified about the seriousness of the allegations against Chief Gilbert, quoting from the officers' May 10, 2011 letter (beginning at the 36:40 mark of the video available online at:

http://www.youtube.com/watch?v=R_pa3RPsrX8&feature=youtu.be)

36.     At the 42.38 minute mark of that video, Mr. Stair notes that the Town of Quartzsite, in the wake of the allegations against Chief Gilbert, is not following its own

policy of placing an officer on administrative leave when serious allegations of criminal wrongdoing are brought against the officer. Mr. Stair urged the Town to place Chief Gilbert on administrative leave during the pending investigation into the alleged wrongdoing.

37.     Despite the serious allegations brought by the ten Quartzsite officers against their own Chief, and despite ongoing investigations into the alleged wrongdoing by Chief Gilbert by the State of Arizona and by the F.B.I, with the La Paz County Attorney writing the F.B.I. to request an investigation into civil rights violations by Chief Gilbert, the Town of Quartzsite has not placed Chief Gilbert, or any of the other officers accused of violating the rights of citizens and accused of criminal wrongdoing, on administrative leave, and has refused to discipline them or otherwise prevent the ongoing, and continuing pattern of false arrest, intimidation, malicious prosecution, harassment, retaliation, intentional infliction of emotional distress, abuse of power, and conspiracy to violate the civil rights of Plaintiff and other citizens.

38.     In fact, while Mr. Stair was still speaking at the June 14, 2011 meeting, rather than giving proper consideration to those serious allegations, the Town Council, except for the Mayor, began leaving their seats and walking out of the meeting, making it very clear that the Town Council had no interest in hearing the officers' serious allegations of abuse of civil rights and corruption against their own Chief of Police, and clearly expressing the Town Council's intent to yet again do nothing to reign in the Chief and his complicit officers.

39.     Thus, despite being warned repeatedly that the Chief and his remaining complicit officers were violating the rights of the citizens of Quartzsite, the Town Council not only did nothing to prevent any further abuse, they in fact ordered that abuse to continue by voting to deny Plaintiff her right to free speech and ordering her removal from the subsequent meeting on June 28, 2011, and then continued to refuse to place Chief Gilbert on administrative leave, despite ongoing state and federal investigations into his abuse of power and violation of rights, which refusal directly facilitated, aided, and encouraged the December 2, 2011 arrest at issue in this complaint, as well as the ongoing campaign of harassment, violation of rights, malicious prosecution, intimidation, intentional infliction of emotional distress, retaliation, and conspiracy to violate the civil rights of Plaintiff that continues to this day.

40.     The Town Council knowingly failed to exercise proper oversight and discipline of the Police Department, and is in fact directly and intentionally complicit in the violations of Mrs. Jones rights, in a long pattern of false arrest and false charges.

41.     In Mrs. Jones' case, the harassment had previously intensified after she announced her candidacy for Town Council, including three arrests and multiple misdemeanor charges even before the June 28, 2011 arrest, and the later arrest on December 2, 2011, all of which where subsequently dismissed.   She has also suffered a string of erroneous zoning violation citations, which were also dismissed, as well as an ongoing unjust and baseless denial of a permit to conduct her pet grooming business,

with town employees specifically instructed to always deny her a permit, even before she has applied.

42.     That harassment by means of wrongful arrest, trumped up citations, and petty denial of a permit for her business, continues to this day, in an ongoing avalanche of false charges and malicious prosecution, with nearly 300 counts of trumped up zoning violations being brought against Plaintiff in 2012 alone, which she is currently fighting.

43.     La Paz County Attorney Samuel Vederman, in his January 3, 2012 letter to F.B.I. agent Frank Farley of the Public Corruption Unit, requested that the F.B.I. conduct an investigation into criminal wrongdoing by Chief Gilbert and the Quartzsite Police Department, stating: "**I believe the circumstances warrant an investigation for the following reasons …. Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred, or, at the very least, did not rise to the level of felony conduct: Russell Sias (Aggravated Assault on a Peace Office), Jennifer Jones (Influencing a Witness), Michael Roth  (Resisting Arrest) and Ed Foster (Obstructing a Criminal Investigation) …. The Town, through Councilwoman Patricia Anderson, publicly criticized this office for declining to prosecute Michael Roth for an incident that took place at a Town Council meeting in June 2011, it is the same incident in Which Chief Gilbert requested this office charge Mr. Roth with felony Resisting Arrest.**" Mr. Vederman's letter is available online at http://aview.info/A-View/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-01-03-FBI-letter.pdf

## II. Claims

### FIRST CAUSE OF ACTION

### FIRST AMENDMENT RIGHT TO FREE SPEECH, PRESS AND ASSEMBLY (All Defendants)

44.     Plaintiff Jones incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

45.     Mrs. Jones's actions and speech in writing her articles critical of the appointment of Defendant Florian to the Personnel Board, as well as her asking Defendant Florian about whether character witnesses would be brought in from California to testify in the Stadler case, are expression and action that is protected by the First Amendment to the United States Constitution.

46.   Defendants violated the First Amendment free speech, free assembly, and free press rights of Mrs. Jones when, without probable cause, and without even interviewing her, without speaking to any of several witnesses, and without even reviewing the easily obtained Quartzsite Town Hall surveillance tape, they had her arrested and imprisoned, using only the false accusations and false "testimony" of one of their own crony employees as a pretext and excuse to yet again arrest Plaintiff on trumped up charges because of their hostility toward Plaintiff's constitutionally protected political speech which was critical of Town policies and actions.

47.   As is well documented by the above noted letter of the ten Quartzsite officers as well as the letter to the F.B.I. from the La Paz County Attorney, Mrs. Jones

has been targeted by the Defendants, in an ongoing pattern of false arrest, false charges, and harassment, all because of her political free speech and press activities – her opposition to the Town and to the Policies of Chief Gilbert.   These acts were done with malicious intent, thus punitive damages are appropriate.

48.   Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiff's rights, privileges and immunities, as secured by the First, Fourth and Fourteenth Amendments to the United States Constitution.   Said rights, privileges and immunities include the right to free speech and press, as well as the right to peacefully assemble, the right to participate in the political process, and the right to criticize public officials and the conduct and procedures of law enforcement officials.

## SECOND CAUSE OF ACTION-FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES, SEIZURES, FALSE ARREST, AND FALSE IMPRISONMENT (All Defendants)

49.   Plaintiff Jones incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

50.   Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Plaintiff's rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution.   Said rights, privileges and immunities include the right to bodily integrity, the right to be free from unreasonable searches and seizures and the right to

be free from false arrest and imprisonment.   Defendants' acts were done with malicious intent, thus punitive damages are appropriate.

THIRD CAUSE OF
ACTION
FIRST AMENDMENT RIGHT TO BE FREE FROM
RETALIATION (All Defendants)

51.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

52.    The participation in the political process, commentary and criticizing of public officials and policy, and political demonstrations, is expression and action that is protected by the First Amendment to the United States Constitution.

53.    Defendants' detention, arrest, and imprisonment of Mrs. Jones for engaging in constitutionally protected speech and political activity constituted unlawful retaliation in violation of her First Amendment rights.   These acts were done with malicious intent, thus punitive damages are appropriate.

FOURTH CAUSE OF
ACTION
FOURTH AMENDMENT RIGHT TO BE FREE FROM MALICIOUS
PROSECUTION (All Defendants)

54.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

55.    Defendants' actions in authorizing and/or directing and requesting the filing of criminal charges against the Plaintiff without probable cause violated

Plaintiff's Fourth Amendment right to be free from malicious prosecution. These acts were done with malicious intent, thus punitive damages are appropriate.

FIFTH  CAUSE OF
ACTION
FAILURE TO TRAIN, ENACT AND IMPLEMENT POLICIES TO
PREVENT ABUSE, SUPERVISE AND DISCIPLINE (Town of Quartzsite)

56.    The failure of Defendant Town of Quartzsite to properly train, enact policies to prevent abuse of civil rights, and failure to supervise and discipline police officers to prevent abuse and violation of constitutionally protected rights, even in the face of overwhelming evidence of abuse and violation of rights, to the level of criminal activity, constitutes deliberate and willful indifference to the rights of those who come into contact with the Quartzsite Police Department.

57.    Plaintiff's injuries were the direct and proximate result of Defendant Town of Quartzsite's failure to provide training and supervision to the police officers serving in its police department, and failure to place Chief Gilbert on administrative leave even after requests to do so by ten of the Quartzsite Police Department officers and by AZCOPS, even after the initiation of formal state investigations and even after being given a copy of the letter to the F.B.I. from La Paz County Attorney Samuel Vederman, requesting a federal criminal investigation for corruption and abuse of power.

58.    The need for effective training and supervision of the individual Defendants, as well as the need to place Chief Gilbert and the other complicit officers

on administrative leave pending investigation,  was  and should have been plainly obvious to the Town of Quartzsite policymakers.

59.      Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of the rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution. Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to be free from unreasonable searches and seizures and the right to bodily integrity.  These acts were done with malicious intent, thus punitive damages are appropriate.

**SIXTH CAUSE OF ACTION**
**INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS (All**
**Defendants)**

60.   As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, false arrest and imprisonment, false charges, and systematic use of the administrative process as a tool of oppression and intimidation were done with overt, malicious intent to stifle, chill, and violate Mrs. Jones rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution by causing her emotional distress. Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to be free from unreasonable searches and seizures and the right to

bodily integrity.  There is a very well documented, overwhelmingly supported, clear pattern of intentional targeting of Mrs. Jones for harassment, intimidation, and intentional infliction of emotional distress in an attempt to chill her speech, silence her, ruin her political campaigns and ruin her business in an attempt to induce her to leave town, all of which were done with malicious intent.  Thus, punitive damages are appropriate.

CONSPIRACTY TO VIOLATE THE CONSTITUTIONALLY
PROTECTED RIGHTS OF PLAINTIFF (All Defendants)

61.   As set forth in the facts section of this complaint, the above well documented and systemic abuse of power, intimidation, retaliation, malicious prosecution, false arrest and imprisonment, false charges, and systematic use of the administrative process as a tool of oppression and intimidation were done with overt, malicious intent as part of a conscious conspiracy among the Defendants to stifle, chill, and violate Mrs. Jones rights, privileges and immunities guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.  Said rights privileges and/or immunities include right of free speech and engaging in the political process, the right to a free press, the right to peaceably assemble, the right to be free from unreasonable searches and seizures and the right to bodily integrity.  There is a very well documented, overwhelmingly supported, clear pattern of intentional, coordinated conspiracy, and actions to further that conspiracy, to target Mrs. Jones for harassment, intimidation, retaliation, and intentional infliction of emotional distress in an attempt to chill her speech, silence her, ruin her political campaigns and ruin her business in an

attempt to induce her to leave town, all of which were done with malicious intent. Thus, punitive damages are appropriate.

**Demand and Prayer for Relief** Wherefore, Plaintiff respectfully requests that the Court:

1.    Exercise jurisdiction over this action;

2.    Award appropriate compensatory damages against all Defendants;

3.    Award appropriate punitive damages against each of the Defendants since these acts were done with malicious intent, thus punitive damages are appropriate; and

4.    Grant such other relief as may be appropriate, including the award of reasonable attorneys' fees, litigation expenses, and costs.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED this 9th day of December, 2012.

Jennifer Marie Jones
Mailing address: P.O. Box 1320
Quartzsite, Arizona, 85346
Residence address: La Posa North LTVA
Quartzsite, Arizona, 85346
(legal residence, but no mail service)
(928) 785-6318
thedesertfreedompress@yahoo.com