1  Lisa S. Wahlin, No. 013979
   **GRAIF BARRETT & MATURA, P.C.**
2  1850 North Central Avenue, Suite 500
   Phoenix, Arizona  85004
3  Telephone:  (602) 792-5700
   Facsimile:  (602) 792-5710
4  E-Mail: lwahlin@gbmlawpc.com

5  *Attorneys for Defendants*

6

                **IN THE UNITED STATES DISTRICT COURT**
7
                    **FOR THE DISTRICT OF ARIZONA**
8

9  Jennifer Marie Jones,                    No.  CV-12-2629-PHX-LOA

                          Plaintiffs,
10

11            vs.                           **JOINT CASE MANAGEMENT
                                            REPORT**
12 Town of Quartzsite; Jeffrey Gilbert and
   Sondra Gilbert, Husband and Wife; Officer
   Rick Paterson, #43; Officer Xavier Frausto,
13 #15, and Terry Frausto, Husband and Wife;
   Denise Ann Florian; Individual Does I-X,
14
                          Defendants.
15

16       Pursuant to the Court's May 30, 2013 Order, the parties submit the following Case

17 Management Report.

18    **1.    PERSONS WHO ATTENDED RULE 26(f) MEETING**

19
      For Plaintiff:    Elmer Stewart Rhodes, Esq.
20                      LAW OFFICE OF ELMER STEWART RHODES
                        432 E. Idaho Street, Suite C-231
21                      Kalispell, Montana  59901

22    For Defendants:   Lisa S. Wahlin, Esq.
                        Graif Barrett & Matura, P.C.
23                      1850 N. Central Avenue, Suite 500
                        Phoenix, Arizona 85004
24
      **2.    LIST OF THE PARTIES**
25
        Plaintiff:      Jennifer Marie Jones
26
        Defendants:     Town of Quartzsite
27                      Jeffrey Gilbert
                        Sondra Gilbert
28                      Rick Paterson

Xavier Frausto
Terry Frausto
Denise Ann Florian

**3.** **NATURE OF THE CASE**

    **a. Factual Basis**

Plaintiff:

Defendants Xavier Frauto and Jeffrey Gilbert arrested Plaintiff Jennifer Jones at the Quartzsite Post Office on December 2, 2011, without a warrant, and initially they refused to tell Plaintiff why she was being arrested, telling her she would find out later. They transported Plaintiff to the holding cell at the back of Town Hall, and finally told her she was being arrested for felony witness tampering, but refused to tell her who made the accusation. Plaintiff had no idea what they were talking about. She was then transported to the La Paz County Jail, where she was interviewed by Officer Paterson, who was acting as the investigator. Officer Paterson finally told her who her accuser was, telling Plaintiff that it was Denise Florian who had accused Plaintiff of threatening her on the steps of Quartzsite Town Hall during a November Town Council meeting – specifically, that Defendant Florian had said that Plaintiff had threatened to bring Florian's ex-boyfriend to Quartzsite (a man whom Florian allegedly fears). Preceding this false accusation and false arrest for the charge of felony witness tampering, Plaintiff had written articles criticizing the October 25, 2011 decision of the Town Council to place Defendant Florian on the newly created Town Personnel Board, which Plaintiff believed was created specifically to facilitate the firing of some of the whistle-blowing Quartzsite police officers who had issued their written letter accusing Chief Gilbert of abusing his power and harassing Plaintiff and other citizens by means of false charges and false arrest.

The Quartzsite Town Council has a pattern of appointing lackeys and yes-men to the municipal boards, so when the Town posted to the town agenda the intent to appoint Denise Ann Florian to the personnel board, which had just been created to hear the cases of the whistle-blowing police officers, and Plaintiff nor any of her acquaintances in town knew who Florian was (including Quartzsite Mayor Ed Foster, who had never heard of

1     Florian before she was placed on the agenda), Plaintiff, as a reporter/publisher,

2     investigated by searching for Florian's name online. Plaintiff found that Florian had lived

3     in Anahiem, California. Plaintiff then checked online court records

4     at http://www.occourts.org/online-services/case-access/ and discovered that Florian had a

5     history of filing restraining orders against people she was in disputes with. Plaintiff, in

6     her written criticism of the appointment of Florian, wrote that she appeared to have a

7     "colorful" past.

8           Plaintiff, while asking around town about Florian, was reminded by a local citizen

9     that Florian was the visibly intoxicated woman who had previously confronted Plaintiff at

10    the Taco Mio Restaurant during Karaoke night, shortly before Florian was appointed to

11    the Personnel Board. Plaintiff recalled that the then-unknown-woman walked up to her,

12    said "I need to talk to you" and grabbed Plaintiff by the arm, pulled her out onto the

13    restaurant patio and asked her what business was it of hers what was going on in Town

14    Hall, asked Plaintiff why she was publishing what she was publishing in her newspaper,

15    and told Plaintiff the goings on at Town Hall were none of her business. This was before

16    Plaintiff even knew who Florian was, and before Plaintiff had written specifically about

17    Florian. Plaintiff did not call the police about being grabbed by this unknown woman in

18    the bar because she had no expectation the police would protect her in any way, based on

19    her long record of biased treatment by the Quartzsite PD.

20          Once Plaintiff found out Florian was slated to be appointed to the Personnel Board,

21    and was reminded of the incident at the Restaurant, whereupon she realized it had been

22    Florian who grabbed her and yelled at her, Plaintiff thought it was strange that someone

23    who hadn't lived in Quartzsite very long, and someone who conducted her self in such a

24    way, would ever be put on a board for anything. Then, after Florian filed a false report

25    against local citizen Dana Stadler (another target of town persecution), Plaintiff knew

26    something was not right and began to investigate, and subsequently wrote an October 12,

27    2011 article in which she stated:

28

> Dana Stadler was arrested Monday, Columbus Day around 11 am for allegedly "assaulting" our newly appointed member of the Quartzsite Personnel Board, Denise Florian. Florian claims Stadler touched her rear end as he walked by, but Stadler insists he was nowhere near her. Florian has a very colorful past, and is expected to be a less than credible witness.

(Available online at: http://thedesertfreedompress.blogspot.com/2011/10/3rd-arrest-for-activist-dana-stadler.html

The comments below the article, posted by others about Florian, were disturbing and raised more questions, so Plaintiff again went online and checked Florian's social networking sites, such as her Facebook and Twitter accounts, and discovered she was "friends" and followers with the town attorney, Martin Brannan, and also, she believed, Police Chief Gilbert and his wife. Plaintiff then told Dana Stadler what she had found out about Florian having disputes with people in California, and Stadler told Plaintiff he might contact the people in California that Florian had sought restraining orders against, and get more information from them, and perhaps call them as character witnesses against Florian as part of his defense against the criminal assault charge.

Thereafter, on the steps of Town Hall, during a Town Council meeting in November, Florian again approached Plaintiff and confronted her, at which point Plaintiff, acting in her role as a journalist, began asking Florian about the upcoming case with Stadler. Plaintiff asked Florian if it was true that there may be character witnesses coming from out of state to testify in the Stadler matter. Florian responded by asking what Plaintiff knew about her ex-boyfriend, and Plaintiff responded by telling Florian that she didn't know about anyone in particular, but had heard that character witnesses may be coming, at which point Florian left. Plaintiff paid it no more mind, and only recalled the incident when she was told by Officer Paterson that it had been Florian who accused Plaintiff of witness tampering based on that brief conversation in front of Town Hall in November.

At no point during that conversation in front of Town Hall did Plaintiff threaten Florian, or threaten to "bring her ex-boyfriend to town" or to bring anyone to town. All

4

Plaintiff did was ask whether it was true that character witnesses may be brought in from out of state, as is her right as a journalist to ask, as a way of eliciting comments from an interviewee. That conversation was recorded on the surveillance camera stationed over the Town Hall front door, which covers the area where they were standing. During the interview with Officer Paterson on December 2, 2011, he acknowledged that he had not yet reviewed that video recording. When Plaintiff later sought a copy of that recording by filing an open records request, the Quartzsite Town Attorney refused to give it to her.

On December 2, 2011, after being arrested and transported to the jail, Plaintiff was finally told that Florian was the accuser, and finally realized that this was payback for Plaintiff's articles criticizing Florian and the Town, and that Florian was colluding with Chief Gilbert to harass, intimidate, and punish Plaintiff in retaliation for her journalism and activism.

After being arrested on December 2, 2011, Plaintiff spent over 24 hours in jail, during which time she had a severe headache, and was denied medical attention despite multiple requests for same. During this time, a blood vessel in Plaintiff's eye burst. The burst blood vessel was noticed by one of the officers as Plaintiff was taken to a video conference with the Justice of the Peace the next morning to plead not guilty and have her bail set. Plaintiff was released on bail at approximately 6pm that evening on December 3, 2011.

The preliminary hearing on the charge of felony witness tampering was subsequently vacated on December 6, 2011, along with an order to release, as Plaintiff noted in a December 9, 2011 article she wrote and posted on her newspaper's website once she became aware of that fact: (available online at: http://thedesertfreedompress.blogspot.com/2011/12/no-justice-for-jennifer-jones-charges.html).

Mr. Sam Vederman, the La Paz County Attorney, refused to bring felony charges, and in a January 3, 2012 letter to the FBI stated that "Chief Jeff Gilbert has requested felony charges against certain citizens for which I believe no criminal conduct occurred."

1   (Available online at:

2   http://www.aview.info/AView/Library/PDF/La%20Paz/VEDERMAN/Vederman-12-01-

3   03-FBI-letter-AV.pdf).

4           Among those charges was listed one against "Jennifer Jones (Influencing a

5   witness)." Since Quartzsite has a pattern of reviving dismissed charges and bringing them

6   against Plaintiff again at a later date, it was not until she became aware of Mr.

7   Vederman's January 3, 2012 letter to the FBI, starting that he believed no criminal

8   conduct occurred and acknowledging it was a baseless accusation, that she was certain she

9   would not be prosecuted for the charge of witness tampering, and was fully aware that she

10  had a basis for a complaint.

11          The Town of Quartzsite retained command, control, and authority over, and was

12  responsible for, the actions of the Defendants at all relevant times.   The Defendants did

13  not have probable cause to arrest Plaintiff, and knowingly conducted a false arrest to

14  harass and intimidate her, within a broader pattern of such harassment, false arrest, and

15  intimidation.

16          Defendants:

17          Defendants Xavier Frausto and Jeffrey Gilbert arrested Plaintiff for tampering with

18  a witness, a class 6 felony, after Defendant Denise Florian reported to police that Plaintiff

19  threatened her with respect to her testimony in an upcoming trial. Although there was

20  probable cause to arrest Plaintiff, the County Attorney declined to prosecute.

21          **b.  Legal Basis**

22          Plaintiff:

23                  i.      Probable cause did not exist for Plaintiff's arrest and for the charges

24                          brought against her.   The lack of probable cause was substantiated

25                          by Mr. Sam Vederman, the La Paz County Attorney, who refused to

26                          bring felony charges, and in a January 3, 2012 letter to the FBI stated

27                          that "Chief Jeff Gilbert has requested felony charges against certain

28                          citizens for which I believe no criminal conduct occurred."  Among

                                            6

1   those charges was listed one against "Jennifer Jones (Influencing a

2   witness)."

3       ii.    Defendants acted with malice and with the purpose of denying

4              Plaintiff a specific constitutional right, her right to free speech,

5              freedom of the press, assembly, and the right to petition government

6              for a redress of grievances

7      iii.    All of the defendants are individually liable because they

8              affirmatively acted, participated in another's affirmative acts, and/or

9              omitted to perform an act which they were legally required to do and,

10             as a result, caused the constitutional deprivation which Plaintiff

11             alleges.

12      iv.    Defendants' actions were extreme and outrageous so as to inflict

13             emotional harm on Plaintiff, and Defendants acted recklessly or with

14             intend to inflict emotional harm.  Moreover, Plaintiff suffered severe

15             emotional distress.   This arrest was but the latest in a pattern of false

16             arrests and false charges against Plaintiff in response to her political

17             activism and outspoken journalism which was critical of the Town

18             Council and the Chief of Police, and in response to Plaintiff running

19             for office in opposition to members of the Town Council who are

20             political allies of the Chief of Police.   As stated by the ten Quartzsite

21             police officers in their written whistle-blower letter to the Town

22             Council, Chief Gilbert " … orders officers to pull over and arrest/cite

23             violations of citizens he feels are against him or he doesn't like. Not

24             because they have committed a violation that he wants enforced

25             equally, but because it is someone he doesn't like."   There exists a

26             clear pattern of intentional harassment and attempt to inflict upon

27             Plaintiff the emotional harm and distress that goes along with false

28             arrest, false charges, and false imprisonment.   Plaintiff has been

1    repeatedly arrested in front of other members of the community, in

2    humiliating fashion.

3         v.    Defendants did not adequately train and supervised their employees,

4               and that deficiency in training and/or supervision was deliberately

5               indifferent to and did cause the deprivation of Plaintiff's

6               constitutional rights.  Defendants were repeatedly warned that the

7               Chief of Police was acting in violation of both state and federal law,

8               and was unlawfully targeting people with false arrest and false

9               charges out of animus for their political views and activism.

10              Plaintiff was one of the most prominent opponents of the Defendants

11              so targeted, to the point of even winning an award for her dogged and

12              courageous reporting of the corruption in Quartzsite politics.  And yet

13              Defendants not only failed to cure those violations through discipline,

14              supervision, or even to investigate them, but also directly participated

15              in those violations of Plaintiff's rights.

16        vi.   Defendants are not entitled to qualified immunity in their individual

17              capacities. *Pearson v. Callahan*, 555 U.S. 223 (2009).

18   Defendants:

19        i.    Plaintiff's First Amended Complaint fails to state a claim as to one or

20              more claims.

21        ii.   Plaintiff failed to properly serve one or more defendants.

22        iii.  Plaintiff's state claims are barred because she failed to comply with

23              Arizona's notice of claim requirements. A.R.S. § 12-821.01.

24        iv.   Probable cause existed for Plaintiffs' arrest and charges brought against

25              Plaintiff, which defeats Plaintiff's claims for false arrest, and malicious

26              prosecution, and First Amendment retaliation. *Cabrera v. City of*

27              *Huntington Park*, 159 F.3d 374 (9th Cir. 1998); *Freeman v. City of Santa*

28              *Ana*, 68 F.3d 1180 (9th Cir. 1995); *Hartman v. Moore*, 547 U.S. 250,

8

1    265-66 (2006).

2       v.    With respect to the Plaintiff's arrest, Defendants did not act with malice

3             and with the purpose of denying Plaintiff a specific constitutional right.

4             *Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995).

5      vi.    Threats are not entitled to First Amendment protection. *See Fogel v.*

6             *Collins*, 531 F.3d 824, 830 (9th Cir. 2008).

7     vii.    Defendants' actions were not substantially motivated as a response to

8             Plaintiff's constitutionally protected conduct. *Nielander v. Board of*

9             *County Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009); *Hartman v.*

10            *Moore*, 547 U.S. 250 (2006).

11   viii.    Defendants' actions were not extreme and outrageous so as to inflict

12            emotional harm on Plaintiff, and Defendants did not act recklessly or

13            intend to inflict emotional harm. Moreover, Plaintiff did not suffer

14            severe emotional distress. *Ford v. Revlon*, 734 P.2d 580, 585 (Ariz.

15            1987).

16     ix.    Defendants are not liable for conspiracy because there was no

17            agreement, or meeting of the minds, to violate Plaintiffs' constitutional

18            rights, and the intracorporate conspiracy doctrine bars Plaintiffs'

19            conspiracy claim. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th

20            Cir. 2010); *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S.

21            752 (1984).

22      x.    One or more of the defendants are not individually liable because they

23            did not affirmatively act, participate in another's affirmative acts, or omit

24            to perform an act which they were legally required to do and, as a result,

25            cause the constitutional deprivation which Plaintiff alleges. *Leer v.*

26            *Murphy*, 844 F.2d 628, 633 (9th Cir. 1998).

27     xi.    Defendants adequately trained and supervised their employees, and any

28            deficiency in training or supervision was not deliberately indifferent and

9

did not cause the deprivation of any of plaintiff's constitutional rights. *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992).

xii. Defendants are entitled to qualified immunity in their individual capacities. *Pearson v. Callahan*, 555 U.S. 223 (2009).

**4. JURISDICTIONAL BASIS OF THE CASE**

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**5. UNSERVED PARTIES**

The parties are unaware of any unserved parties. Defendants believe service was insufficient as to one or more of Defendants.

**6. STATEMENT REGARDING AMENDING PLEADINGS.**

Defendants do not intend to amend the pleadings.

**7. CONTEMPLATED MOTIONS.**

Defendants may file a motion to dismiss addressing one or more of the following issues: insufficiency of service of process, failure to comply with Arizona's notice of claim statute, and failure to state a claim. Defendants also anticipate that following some discovery they will be filing a summary judgment motion.

**8. REFERENCE TO UNITED STATES MAGISTRATE JUDGE.**

The parties do not believe that this case is suitable for a reference to a different United States Magistrate Judge for a settlement conference at this time.

**9. STATUS OF RELATED CASES**

The parties are unaware of any related cases pending before other judges.

**10. INITIAL DISCLOSURE STATEMENTS.**

The parties have not yet exchanged Initial Disclosure Statements and propose that they exchange initial disclosure statements on or before **July 12, 2013**.

**11. DISCLOSURE OF ELECTRONICALLY STORED INFORMATION.**

The parties do not anticipate any issues relating to the disclosure or discovery of electronically stored information. The parties will comply with the provisions of Rules

26(a) and 34 and will disclose any electronically stored information as a printed documents where possible and/or in its native format.

**12. ISSUES RELATED TO PRIVILEGE OR WORK PRODUCT.**

The parties do not anticipate any issues relating to claims or work product.

**13. NECESSARY DISCOVERY.**

    **a.** At this time, the parties expect to exchange written discovery, and depose Plaintiff and the named Defendants.

    **b.** The parties do not suggest any changes to the discovery limitations imposed by the Federal Rules of Civil Procedure and LR Civ. 16.2.

    **c.** The parties propose that depositions be limited to four hours.

**14. PROPOSED DEADLINES**

| | |
|---|---|
| **a. Motions to Amend the Pleadings** | **August 30, 2013** |
| **b. Plaintiff's expert disclosure** | **November 15, 2013** |
| **Defendants' expert disclosure** | **December 13, 2013** |
| **Rebuttal expert disclosure** | **January 10, 2014** |
| **c. Discovery** | **March 14, 2014** |
| **d. Dispositive motions** | **April 11, 2014** |

**15. WHETHER A JURY TRIAL HAS BEEN REQUESTED**

Both parties have requested a jury trial.

**16. ESTIMATED DATE FOR AND LENGTH OF TRIAL**

The parties estimate that this case will take 3 days to try.

**17. PROSPECTS FOR SETTLEMENT**

The parties are willing to participate in settlement negotiations at the appropriate time. Defendants believe settlement negotiations at this time would be premature and would be much more productive after at least some discovery has been done. At this time Defendants are unable to determine the probability of settlement.

**18. MODIFICATION OF PRETRIAL PROCEDURES**

The parties are unaware of any modifications to pretrial procedures or other matters

that would aid the Court in resolving this dispute in a just, speedy, and inexpensive manner.

RESPECTFULLY SUBMITTED this 24th day of June, 2013.

GRAIF BARRETT & MATURA, P.C.


By /s/ Lisa S. Wahlin
    Lisa S. Wahlin
    1850 North Central Avenue, Suite 500
    Phoenix, Arizona  85004
    *Attorneys for Defendants*


By /s/ Elmer Stewart Rhodes
    Elmer Stewart Rhodes
    432 E. Idaho St., Suite C-231
    Kalispell, Montanan 59901
    *Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on June 24th, 2013, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic filing to the following CM/ECF registrants:

Elmer Stewart Rhodes
432 E. Idaho St., Suite C-231
Kalispell, Montanan 59901
*Attorney for Plaintiff*

/s/ Karen McElroy

4821-7670-3508, v.  1